UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

BANK OF THE OZARKS,                     )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )        CIVIL ACTION
                                        )        FILE NO. 2:11-cv-0319-WCO
PRINCETON FARMS DEVELOPMENT             )
PARTNERS, LLC, ZACHARY W.               )
MCLEROY, STARKE V. HUDSON,              )
BRYAN BANK & TRUST, and                 )
HOMETOWN COMMUNITY BANK,                )
                                        )
        Defendants.                     )

## BRYAN BANK'S MOTION TO COMPEL DISCOVERY
## AND SUPPORTING MEMORANDUM OF LAW

Defendant Bryan Bank & Trust ("Bryan Bank") moves the Court pursuant to

Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv) for an order compelling Plaintiff Bank of

the Ozarks ("Plaintiff") to answer fully and completely Bryan Bank's First

Interrogatories to Plaintiff (Exhibit A hereto) and to produce the documents

requested in Bryan Bank's First Request for Production of Documents (Exhibit B

hereto).  Plaintiff has asserted an array of boilerplate "General Objections" and

other meritless objections to avoid answering nine of Bryan Bank's eleven

narrowly-drafted interrogatories and to withhold documents responsive to 14 of the

18 paragraphs in Bryan Bank's request for production of documents. Plaintiff's

interrogatory answers are attached as Exhibit C and its written response to the

request for production is attached as Exhibit D. A Certificate of Compliance with

Local Rule 37.1 and FED. R. CIV. P. 37(a)(1) is attached hereto as Exhibit E.

## MEMORANDUM OF LAW

## I.   STATEMENT OF FACTS

The relevance of the information Bryan Bank seeks through its discovery

can be plainly seen through the parties' pleadings. This action involves the rights

and obligations of the various parties to a commercial loan (the "Loan") that

Chestatee State Bank ("Chestatee") made to defendant Princeton Farms

Development Partners, LLC ("Princeton Farms") (Doc. 32, ¶10). Georgia banking

regulators declared Chestatee to be insolvent on December 17, 2010, and appointed

the FDIC to be its receiver (Doc. # 32, ¶¶29-31). On the same day, the FDIC sold

the Loan and many of Chestatee's other assets to Plaintiff pursuant to a Purchase

and Assumption Agreement (Id.). Plaintiff filed this action in December 2011,

originally alleging a suit on a promissory note given by Princeton Farms and a

claim on guaranties given by defendants McLeroy and Hudson (Doc. 1).

Plaintiff added Bryan Bank (movant herein) and Hometown Community Bank ("Hometown") to this action later (Doc. 32), and those banks filed counterclaims against Plaintiff (Doc. 51, 55). The claims among the banks arise from participation agreements that Chestatee signed with Bryan Bank and Hometown, through which Bryan Bank and Hometown acquired interests of 26.67% and 20%, respectively, in the Loan (Doc. 32, ¶¶21-28). Under the terms of the participation agreements, Chestatee was to be the administrator of the Loan and liable to Bryan Bank and Hometown for actions taken in bad faith or through willful misconduct. (Doc. 51, exh. A). *A fortiori*, Chestatee was obligated to perform its obligations under the agreements in good faith. The agreements permitted Bryan Bank and Hometown to remove the administrator bank on various grounds, including the "fail[ure] to comply with [its] fiduciary, contractual or legal obligations as provided under this Agreement or by state or federal law." (Id.).

When Plaintiff purchased the Loan and other Chestatee assets from the FDIC in December 2010, the Loan--which had originated in 2006 in the amount of $11,250,000 and been renewed--was not in default. Effective May 13, 2011, the parties to this action agreed to modify the Loan by extending its maturity date to

May 13, 2013 and calling for Princeton Farms to make monthly interest payments at 4.5% and quarterly principal payments, beginning on August 13, 2011, of $100,000.

Bryan Bank expects the evidence to show that, when the first quarterly principal payment came due on August 13, 2011, Princeton Farms paid $10,000 of the $100,000 principal payment then due.  Despite Princeton Farms having made timely interest payments totaling hundreds of thousands of dollars over a period of more than four years, Plaintiff wasted no time hiring counsel who accelerated the entire loan balance in a letter dated November 7, 2011, (Doc. 32, exh. N), and filed this action against Princeton Farms and the guarantors on December 2, 2011. (Doc. 1).  Plaintiff refused to consider another modification of the loan that Bryan Bank and Hometown believed would likely enable all three banks eventually to be paid in full. (Doc. 51, ¶¶ 40-41, 59, 62 of counterclaim).

Bryan Bank and Hometown removed Plaintiff as administrator of the Loan, and Bryan Bank assumed the role of administrator  (Doc. 51, ¶¶53-61 of counterclaim).  On March 30, 2012, Bryan Bank and Hometown agreed with Princeton Farms and defendant McLeroy to modify the loan by reducing the 4.5%

interest rate and extending the maturity date from May 2013 to December 2018. The modified terms call for 45 monthly payments of interest and principal of $48,189.18, at 3.5% interest, and then 35 payments of $51,051.27, at 4% interest. (Doc. 51, ¶¶65-66 of counterclaim).  Although not reflected in the present record, Princeton Farms has made timely payments under the modified terms.  See Doc. 76, through which the Court is permitting Plaintiff to pay its share of those payments into the registry of the Court.

The central issue in this action is why Plaintiff refused to agree to a modification of the loan that the other banks believed would likely result in full repayment of the loan by a borrower which had consistently paid substantial sums of interest on the Loan throughout a prolonged recession.  Bryan Bank contends in its answer to the First Amended Complaint and in its counterclaim that Plaintiff's actions were driven by its selfish desire to protect itself from financial loss pursuant to a Commercial Shared-Loss Agreement (the "Shared-Loss Agreement") that Plaintiff has with the FDIC.  (Doc. 51, Third Defense at 3, ¶¶ 45-52 of counterclaim).

5

Bryan Bank asserts that Plaintiff signed the Shared-Loss Agreement with the FDIC as part of the acquisition of Chestatee's assets. (Doc. 51, ¶¶42-44 of counterclaim). The typical loss-share agreement guarantees that the FDIC will pay an acquiring bank 80% of the bank's losses resulting from loans in an acquired loan portfolio. (Id.) Neither Bryan Bank nor Hometown was a party to this agreement; accordingly, both Bryan Bank and Hometown will bear 100% of any losses they incur on the Princeton Farms loan. (Doc. 51, ¶ 48 of counterclaim). Bryan Bank further alleged that Plaintiff filed this action to demonstrate to the FDIC that it has exhausted all available collection efforts against Princeton Farms and its guarantors, which is a condition of Plaintiff recovering from the FDIC under the Shared-Loss Agreement. (Doc. 51, ¶46 of counterclaim ).

In its First Amended Complaint, Plaintiff asks the Court to declare it to be the administrator of the loan and to award damages that it allegedly suffered as a result of the actions of Bryan Bank and Hometown. (Doc. 32). Bryan Bank has counterclaimed, asking the Court to confirm its position as administrator and to require Plaintiff to acquiesce to the terms of the March 30 modification of the Loan. (Doc. 51).

6

Given the issues framed by the pleadings, it is readily apparent that documents and communications discussing the Loan, the Shared-Loss Agreement as it relates to the Loan, Plaintiff's internal rules for dealing with participation agreements and loss-sharing agreements, and Plaintiff's compliance with FDIC guidelines on loss sharing agreements are highly relevant to the claims and defenses in the case and especially to the issue of Plaintiff's lack of good faith.

II.   <u>ARGUMENT AND CITATIONS OF AUTHORITY</u>

"Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense . . . .*" FED. R. CIV. P. 26(b)(1)(italics added). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>

"The party resisting discovery has a 'heavy burden' of showing why discovery should be denied." <u>Williams v. The Art Inst. of Atlanta</u>, No. 1:06-cv, 2006 WL 3694649, at *3 (N.D. Ga. Sept. 1, 2006) (quoting <u>Roehrs v. Minn. Life Ins. Co.</u>, 228 F.R.D. 642, 644 (D. Ariz. 2005)). If an objection applies to only part of an interrogatory or document request, the party must provide discovery with

respect to that part of the request not covered by the objection.  See FED. R. CIV. P. 33(b)(3) ; 34(b)(2)(C).

## A.    General Objections

Bryan Bank first addresses Plaintiff's "General Objections."  Plaintiff employs eight general objections that serve no purpose but to waste time and allow Plaintiff to withhold discoverable information.  See Exhibits C at 1-5 and D at 1-5. Those eight General Objections, with italics added, are as follows:

1. Plaintiff objects to each Interrogatory *to the extent that* it calls for a legal conclusion rather than a statement of fact.

2. Plaintiff objects to each Interrogatory *to the extent that* it calls for the opinions of counsel not properly within the ambit of discovery.

3. Plaintiff objects to the Instructions contained in the First Interrogatories and to each Interrogatory *to the extent that* they impose or purport to impose on Plaintiff obligations that are greater than those imposed by the provisions of the Federal Rules of Civil Procedure.

4. Plaintiff objects to each Interrogatory *to the extent that* it is vague, ambiguous, overly broad, irrelevant, unduly burdensome, not limited in time or scope and/or not reasonably calculated to lead to the discovery of admissible evidence.

5. Plaintiff objects to each Interrogatory *to the extent that* it seeks information or documents protected by the attorney-client privilege, work-product doctrine, accountant-client privilege, or any other

8

applicable privilege or immunity, on the grounds it seeks information beyond the scope of permissible discovery.

6. Plaintiff objects to each Interrogatory *to the extent that* it improperly seeks confidential and proprietary information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and/or that is not subject to an appropriate Protective Order entered in this case.

7. Plaintiff objects to each Interrogatory *to the extent that* it seeks documents and/or information protected by the Bank Secrecy Act, 31 U.S.C. § 5318(g), 12 C.F.R. § 353.3(g), and to the extent that it seeks documents and/or information relating to any deposit account, loan account, or other banking relationship without prior notification to such depositors or other customers of such deposit account, loan account, or other banking relationship as required by O.C.G.A. § 7-1-360(c), and in accordance with other applicable law.

8. Plaintiff objects to each Interrogatory *to the extent that* it seeks information that is not in the possession, custody, and/or control of Plaintiff.

In a 9th General Objection, Plaintiff objects to producing documents in Gainesville, Georgia, the forum that Plaintiff chose for this action, but offers to provide copies of documents by mail.  In a telephone conference among counsel on September 26 (see Exhibit E hereto), counsel for Plaintiff agreed to provide copies of those few documents they are willing to provide on CD's, as Bryan Bank has done for them.  Those documents would be responsive to paragraphs 6, 8, 10 and 11 of the request for production (Exhibit D).  As of the date of filing of this motion, Plaintiff has not provided any such CD's and has not produced a single document.

9

In its 10th "General Objection," Plaintiff states that discovery is not complete and that it "reserves the right to supplement" its responses "as the case progresses." But discovery will expire on November 5, Doc. 73, and Plaintiff has a duty, not a right, to supplement discovery under Fed. R. Civ. P. 26(e). As of now, Plaintiff has not provided *any* of the requested documents and there is nothing to "supplement."

In its 11th "General Objection," Plaintiff essentially states that it purchased the Loan from the FDIC, that Plaintiff does not have "all documents related to the operation of Chestatee State Bank," and that some of Bryan Bank's "requests may be better directed to the FDIC." Nowhere does Plaintiff identify which requests should be directed to the FDIC.

In its final, 12th General Objection, Plaintiff purports to make each of the General Objections apply to each paragraph of the interrogatories and request for production through this sweeping statement:

> ***Subject to*** the foregoing General Objections, ***which are specifically incorporated as if set forth fully verbatim in each of the following [individual] Responses***, Plaintiff [below responds to the individual paragraphs of the discovery]. (emphasis added).

For the following reasons, Bryan Bank asks the Court to strike all of Plaintiff's "General Objections" and to compel Plaintiff to provide all of the

responsive information and documents it has attempted to shield through those objections.

> The Federal Rules do not prohibit general objections, but if the general objection is interposed in an attempt to insulate from discovery a large quantity of material that includes otherwise discoverable material when only some of the material may be protectable, the objection is inconsistent with the aim of discovery and may well be the subject of sanction.

Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 139-40 (3d Cir. 2009). "General, blanket objections are not acceptable." 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 33.171 (Matthew Bender 3d ed.). Such objections interposed in an introductory paragraph "in a boilerplate fashion without any connection to the circumstances of the case . . . . should be discouraged." Id.; see also Network Tallahassee, Inc. v. Embarq Corp., No. 4:10-cv-38-RH/WCS, 2010 WL 4569897, at *1 (N.D. Fla. Sept. 20, 2010) (calling practice of responding "subject to and without waiving" blanket objections "an abusive practice that has become commonplace but should end" and stating that "[a] party met with a response of this kind may insist that the objections be explicitly waived or withdrawn in writing and, if they are not, may move to compel. The motion will always be granted, and fees will always be assessed, at least absent a reasonable

explanation that is difficult to imagine."); Ritacca v. Abbot Labs., 203 F.R.D. 332,

335 n.4 (N.D. Ill. 2001) ("As courts have repeatedly pointed out, blanket

objections are patently improper.").

All of Plaintiff's first eight general objections are "to the extent" objections.

"To the extent" objections are "worthless for anything beyond delay of the

discovery." Sonnino v. Univ. of Kan. Hosp. Auth., 221 F.R.D. 661, 667 (D. Kan.

2004). "Such objections are considered mere hypothetical or contingent

possibilities, where the objecting party makes no meaningful effort to show the

application of any such theoretical objection to any request for discovery."

Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 661 (D. Kan. 2004) (quoting

Sonnino, 221 F.R.D. at 667).

One judge of this Court has placed an outright ban on general objections .  In

his "Standing Order Regarding Civil Litigation," the Honorable Richard Story

states that "[b]oilerplate objections in response to discovery requests are strictly

prohibited," that "general objections are prohibited," and that "a party who objects

to a discovery response but then responds to the request must indicate whether the

response is complete; i.e., whether additional information or documents would

have been provided but for the objection(s)." See Exhibit F hereto, at 3-4.

**B.     Objections to Discovery of Communications Between Plaintiff and FDIC about the Loan**

Bryan Bank is mindful of the requirement in Local Rule 37.1 that motions to compel be arranged so that the objections, grounds, authority and supporting reasons for the motion follow the verbatim statement of each interrogatory and document request.  Because of Bryan Bank's need to address an extraordinary number of objections in the allowed 25 briefing pages, Bryan Bank asks the Court's leave to group together those interrogatories and requests to produce which involve similar subject matters and to which Plaintiff asserted identical objections. The first group consists of interrogatories and document requests relating to Ozark's communications with the FDIC about the Loan and the Commercial Shared-Loss Agreement (sometimes referred to as the CSLA in the discovery) as that agreement relates to the Loan.

The following are the interrogatories and requests for production regarding FDIC communications to which Plaintiff wrongfully objected:

**Interrogatories (Exhibit A hereto)(emphasis added):**

1. For the period from January 1, 2010, to the present, ***identify all documents*** **evidencing any communications between you and the FDIC** relating to any of the following: a) Princeton Farms; b) McLeroy; c) the Loan; d) the original Loan Documents; e) the Note Modification; and/or f) the Participation Agreements.

5.     Describe each **communication you have had with the FDIC** relating to the Loan or to the Note Modification.

13

6. Describe each **communication you have had with the FDIC** relating to the Commercial Shared-Loss Agreement.

7. Describe all **communications or discussions you have had with the FDIC** to determine future loss-share eligibility of the Loan pursuant to the Commercial Shared-Loss Agreement.

8. Describe any **potential conflicts of interest you have identified to the FDIC** with respect to the Loan as it relates to the Commercial Shared-Loss Agreement.

9. Describe all **communications you have had with the FDIC** with respect to whether the term of the Loan can be extended beyond the end of the final Shared-Loss Quarter described in the CSLA.

10. Describe any permitted amendments, as defined in the CSLA, that **you have sought from the FDIC** with respect to the Loan.

**Requests for Production (Exhibit B hereto)(emphasis added):**

1. For the period from January 1, 2010, to the present, all documents evidencing any communications between you and the FDIC relating to any of the following: a) Princeton Farms; b) McLeroy; c) the Loan; d) the Loan Documents; e) the Note Modification; and/or f) the Participation Agreements.

15. All documents relating to communications or discussions you have had with the FDIC to determine future loss-share eligibility of the Loan pursuant to the Commercial Shared-Loss Agreement between You and the FDIC.

16. All documents that relate to any identifiable or potential conflicts of interest You have identified that relate to the Commercial Shared-Loss Agreement and the Participation Agreements.

17. All documents relating to communications you have had with the FDIC with respect to whether the term of the Loan can be extended

beyond the end of the final Shared-Loss Quarter identified in the Commercial Shared-Loss Agreement.

18. All documents you have shared with the FDIC relating to the willingness or capacity of Princeton Farms and/or McLeroy to repay the Loan.

Plaintiff responded to all of these with the following set of objections either explicitly or through "incorporation by reference":

Plaintiff objects to Interrogatory No. 1 on the ground that it is overly broad, unduly burdensome, and seeks the discovery of confidential communications and work product protected from disclosure by the common-interest privilege. Plaintiff further objects on the ground that Interrogatory No. 1 calls for the discovery of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC is not a party to, or third-party beneficiary of, any of the Note, the Security Deed, the Guaranties, or related Loan Documents . . . . Nor is the FDIC a party to, or third-party beneficiary of, the Participation Agreements or amendments thereto . . . . Most importantly, none of the Defendants are parties to, or third-party beneficiaries of, the Purchase and Assumption Agreement dated as of December 17, 2010 (or the Commercial Shared-Loss Agreement therein) between Plaintiff and the FDIC as receiver for Chestateee State Bank. **Accordingly, Plaintiff's communications with the FDIC are irrelevant to the claims and defenses in this case.**

Exhibit C, at 5-13, ¶¶ 1, 5-10 see also Exhibit D, at 5-6,13-14, ¶¶ 1,1 5-18 (setting

forth same objections to request for production of documents). Plaintiff further

objected to Interrogatory 6 on the grounds that it is "overly broad, not reasonably

limited to the subject matter of this lawsuit, and unlimited in time."

15

Plaintiff thus makes three general objections related to its communications with the FDIC: (1) the requests are overbroad and unduly burdensome, (2) they seek confidential communications and work product protected by the common interest privilege, and (3) they call for information or documents that are neither relevant nor reasonably calculated to lead to relevant information.

1.    *Plaintiff improperly objects that the requests are overbroad and unduly burdensome.*

Plaintiff's objections to the breadth of the requests and the burden they place on Plaintiff are unfounded because the objections are offered wholly without meaningful explanation.   Moreover, Plaintiff made no effort to provide discovery with respect to clearly discoverable information and documents that do not fall within Plaintiff's personal definition of overbreadth and burdensome.

"Objections which simply state that a discovery request is 'vague, overly broad, or unduly burdensome,' are, by themselves, meaningless." Henns v. Mony Life Ins. Co. of Am., No. 5:11-cv-55-Oc-37TBS, 2011 WL 5358423, at *5 (M.D. Fla. Oct. 31, 2011); see also Williams, 2006 WL 3694649, at * 4 ("The objecting party, however, must do more than simply intone the familiar litany that the interrogatories are burdensome, oppressive or overly broad before a court will narrow overbroad discovery." (internal quotation omitted)).   "A party properly objecting on these grounds "must explain the specific and particular ways in which

a request is vague, overly broad, or unduly burdensome." Id. (quoting Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 695 (S.D. Fla. 2007)).  It is the Plaintiff's burden, as the objecting party, to demonstrate that discovery requests are overbroad and unduly burdensome.  See Hornbeck v. Club Madonna, No. 09-23447-CIV, 2010 WL 1911381, at *2 (S.D. Fla. May 12, 2010).

Plaintiff has offered no explanation as to why these requests are overbroad or unduly burdensome.  Plaintiff's communications with the FDIC about the Loan surely have not involved boxes and boxes (and likely not even a single box) of documents.  Moreover, the requests by their very nature are limited to the time between when Plaintiff began negotiating with the FDIC to purchase Chestatee Bank's assets and the time that has elapsed since the purchase date of December 17, 2010.[1]   Accordingly, the Court should overrule these objections.

2.    *Plaintiff has failed to state the bases for its privilege objections.*

Plaintiff's objection that the discovery seeks "the discovery of confidential communications and work product *protected from disclosure by the common interest privilege"* is equally unfounded.

---

[1] The Court should overrule Plaintiff's additional "overbroad" objections to Interrogatory 6 for the reasons stated above.  Furthermore, Interrogatory 6 is factually limited in time because it refers to the Shared-Loss Agreement at issue in this case.  The Shared-Loss Agreement, which Bryan Bank believes became effective on December 17, 2010, was certainly not perpetual, thus rendering Plaintiff's "unlimited in time" objection meritless.

17

> When a party withholds information otherwise discoverable under
> these rules by claiming that it is privileged or subject to protection as
> trial preparation material, the party shall make the claim expressly and
> shall describe the nature of the documents, communications, or things
> not produced or disclosed in a manner that, without revealing
> information itself privileged or protected, will enable other parties to
> assess the applicability of the privilege or protection.

FED. R. CIV. P. 26(b)(5).  "Blanket assertions of privilege are insufficient to satisfy this burden.  The party claiming the privilege must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged or protected."  Burns v. Imagine Films Entm't, Inc., 164 F.R.D. 589, 594 (W.D.N.Y. 1996) (internal citation omitted).

Plaintiff has never disclosed the identity or existence of documents potentially responsive to Bryan Bank's requests, whether subject to a privilege objection or some other objection.   Plaintiff objected to Bryan Bank's interrogatory 1, in which Plaintiff was asked only  to "identify" documents

evidencing communications Plaintiff has had with the FDIC about matters relating specifically to this very loan,[2] refusing to identify even a single document.

"[I]t is well established that questions designed to elicit *the existence or identity* of documents or the parties to a communication do not call for protected information; only when the actual content of the communication is requested could the issue of privilege . . . arise." In re Shopping Carts Antitrust Litig., 95 F.R.D. 299, 304 (S.D.N.Y. 1982)(emphasis added). Accordingly, Plaintiff's refusal even to identify documents containing its communications with the FDIC is entirely improper.

Plaintiff's claim of a common interest privilege is equally perplexing, as one cannot even discern with whom Plaintiff claims to have a common interest. It presumably is not the FDIC. The FDIC is not a party to this action and Plaintiff's lengthy objection quoted above to Interrogatory 1, which Plaintiff incorporated by reference into most of its interrogatory answers and document responses, appears to say that the FDIC has no interest in this litigation. See generally Go Medical Industries Pty, Ltd. v. C.R. Bard, Inc., No. 1:93-cv-1538, 1995 WL 605802, at *2

---

[2] "1. For the period from January 1, 2010, to the present, *identify all documents* **evidencing any communications between you and the FDIC** relating to any of the following: a) Princeton Farms; b) McLeroy; c) the Loan; d) the original Loan Documents; e) the Note Modification; and/or f) the Participation Agreements."

(N.D. Ga. July 6,1995)(suggesting the common interest privilege applies only to parties or potential parties to the litigation).

   3.   *The information and documents Bryan Bank seeks are relevant and likely to lead to the discovery of admissible evidence.*

Finally, Plaintiff cannot satisfy its heavy burden of establishing that the FDIC-related discovery sought by Bryan Bank is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.   "An objection that a discovery request is irrelevant and not reasonably calculated to lead to admissible evidence must include a specific explanation describing why." Martin v. Zale Del., Inc., No. 9:08-CV-47-T-27EAJ, 2008 WL 52555555, at *2 (M.D. Fla. Dec. 15, 2008).

Plaintiff's relevancy objections lack substance and justification.  Plaintiff seeks to forestall discovery of its communications with the FDIC relating to the Loan by asserting the FDIC is not a party to the loan documents and Bryan Bank is not a party to the Shared-Loss Agreement.  But Bryan Bank asserts in its answer to the First Amended Complaint and in its counterclaim that Plaintiff breached the participation agreement with Bryan Bank by acting in bad faith and complete self-interest to recover 80% of its loss from the FDIC without regard for the losses that Bryan Bank and Hometown would incur.  Those allegations make Plaintiff's communications with the FDIC about the Loan, the Shared-Loss Agreement as it

pertains to the Loan, and the participation agreements keenly relevant to Bryan Bank's claims and defenses and therefore patently discoverable.

Bryan Bank's discovery efforts focus on communications and documents that are reasonably calculated to delve into Plaintiff's motivation and conduct in filing suit and refusing to modify the Loan.  Plaintiff's conduct under the participation agreements must be judged under a standard of fairness to Bryan Bank, and Plaintiff cannot fairly base its conduct on selfish considerations of pecuniary gain stemming from conflicts of interest.  See Hunting Aircraft, Inc. v. Peachtree City Airport Authority, 281 Ga. App. 450, 452 (2006)(discussing elements of good faith in performing contracts).    Plaintiff's communications with the FDIC, and Plaintiff's understanding of its responsibilities under the Purchase and Assumption Agreement and the Shared-Loss Agreement, are relevant in determining whether Plaintiff has acted in good faith under the participation agreements.  Accordingly, Plaintiff seeks relevant material through discovery, and its requests were reasonably calculated to lead to the discovery of admissible evidence.

**B.    Objections to Internal Communications and Documents Regarding the Loan**

The next group of discovery requests involving similar subject matters and objections are those relating to Plaintiff's own internal communications

and documents.  The pertinent document requests in this group are quoted below.

### Requests for Production:

4. All minutes of loan committee meetings and minutes of board meetings evidencing your discussions of the Loan or of any potential or purported modification to the Loan.
**Plaintiff's Response:** Plaintiff objects to this Interrogatory as overly broad, unlimited in time, and not reasonably calculated to lead to the discovery of admissible evidence.

5. All of Your internal memoranda, emails and other internal documents evidencing Your discussions of the Loan or of any potential or purported modification to the Loan.
**Plaintiff's Response:** Plaintiff objects to Request No. 5 on the ground that it calls for the production of documents that are protected from the attorney client privilege or the work product doctrine.  Plaintiff also objects on the ground that this Request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

12. All of Your internal memoranda, guidelines, rules, regulations or other internal documents that discuss or relate to loss-sharing agreements with the FDIC.
**Plaintiff's Response:** For its response to Request No. 12, Plaintiff refers to and incorporates by reference its objections and response to Request No. 1.

13. All guidelines, rules, regulations or other documents in your possession, custody or control, that were promulgated or published by the FDIC or any other department,  agency, bureau or other entity of the United States of America that discuss or relate to loss-sharing agreements where participation loans are involved. . . .
**Plaintiff's Response:** For its response to Request No. 13, Plaintiff refers to and incorporates by reference its objections and response to Request No. 1.

14.  All reviews and evaluations you have conducted of the Loan.
**Plaintiff's Response:**  Plaintiff objects to this Request on the ground that it calls for the production of documents protected from disclosure by the attorney-client privilege or the work product doctrine.  Plaintiff further objects on the ground that this Request calls for the production of documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

16. All documents that relate to any identifiable or potential conflicts of interest You have identified that relate to the Commercial Shared-Loss Agreement and the Participation Agreements.
**Plaintiff's Response:** For its response to Request No. 16, Plaintiff refers to and incorporates by reference its objections and response to Request No. 1.

Plaintiff thus largely repeats the same objections in responding to Bryan Bank's discovery requests for Plaintiff's internal documents relating to this very loan and to guidelines and rules promulgated by Plaintiff itself and by the FDIC relating to loss-sharing agreements.  These objections likewise amount to unspecific blanket objections with no factual or legal justification.  For the reasons stated above, the Court should overrule these objections.

Furthermore, Bryan Bank's requests seek relevant information and are reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff's internal communications regarding the Loan and possible modifications to the Loan are highly probative of Plaintiff's motivation and culpability in seeking to sue on the Loan.  The same is true of Plaintiff's internal and external rules on loss sharing agreements and participation agreements and of documents in which

Plaintiff has identified potential conflicts of interest with respect to the Loan. Accordingly, Bryan Bank's requests are within the scope of permissible discovery.

## C.   Additional Objections

Because of the 25-page limit on this brief under Local Rules, Bryan Bank is unable to address additional concerns with Plaintiff's meritless objections without leave of Court.  Bryan Bank thus requests permission to submit the arguments set forth in the "Supplement" that follows the signatures of counsel below.

## CONCLUSION

For the foregoing reasons, Bryan Bank respectfully requests that the Court compel Plaintiff to give complete and truthful responses to its interrogatories 1, 5-10 and, if the Court elects to consider the Supplement hereto, 4 and 11, and document requests 1, 4-5, 12-15, 17-18, and, if the Court elects to consider the Supplement, request 7.  Moreover, if Plaintiff has not produced the documents responsive to requests 6, 8, 10 and 11 on CD's by the date the Court rules on this motion,  Bryan Bank asks that the Court order Plaintiff to produce them without further delay.  Finally, Bryan Bank requests that the Court order payment of its reasonable expenses incurred in filing this motion, including attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5)(A).

s/ Paul W. Painter, Jr.
Georgia Bar No. 559450
Attorney for Bryan Bank & Trust
Ellis, Painter, Ratterree & Adams LLP
2 East Bryan St., 10th Floor (31401)
Post Office Box 9946
Savannah, Georgia  31412-0146
Fax:  (912) 233-2281
Telephone:  (912) 233-9700
Email:  ppainter@epra-law.com

s/ Steven P. Gilliam
Georgia Bar No. 294950
Attorney for Bryan Bank & Trust
Smith, Gilliam, Williams & Miles
301 Green Street NW
Suite 200
Gainesville, Georgia  30501
Telephone:  (770) 744-5413
Fax:  (770) 531-1481
Email:  sgilliam@sgwmfirm.com

<u>SUPPLEMENT</u>

Bryan Bank submits the following additional objections for the Court's review if the Court grants leave to exceed the 25-page limit.

**Interrogatories:**

4. Identify all documents in your possession, custody, or control relating to the facts or issues in this matter, including any that may be used solely for impeachment.

**Plaintiff's Response:** Plaintiff objects to Interrogatory No. 4 on the ground that it is overly broad and unduly burdensome.  Plaintiff further objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege or work product doctrine.
Subject to and without waiving these objections, Plaintiff states that the **answer to this Interrogatory may be determined by examining Plaintiff's** business records, and the burden of deriving or ascertaining the answer is the same for Bryan Bank as for Plaintiff.  Accordingly, Plaintiff will produce non-privileged, responsive documents in lieu of a narrative response at a time and place as the parties may agree upon.

In its response to interrogatory 4, Plaintiff tacitly invokes Federal Rule of

Civil Procedure 33(d)[3] and promises production of pertinent materials but

---

[3] Fed. R. Civ. P. 33(d) provides:  If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

**(1)** specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

identifies no documents, pages, or paragraphs specifically responsive to the interrogatory . This evasion is a per se deficient use of Rule 33(d).  See Spadaro ex rel. Caravella v. City of Miramar, No. 11-61607-civ, 2012 WL 3042988, at *4 (S.D. Fla. July 25, 2012) ("Plaintiff must either provide a complete written response for each interrogatory or cite to specific page and paragraphs of each document he claims is responsive."); Pulsecard, Inc. v. Discover Card Servs., Inc., 168 F.R.D. 295, 305 (D. Kan. 1996)) ("Under the guise of Fed. R. Civ. P. 33(d) defendants may not simply refer generically to past or future production of documents.  They must identify in their answers to the interrogatories specifically which documents contain the answer.  Otherwise they must completely answer the interrogatories without referring to the documents.").

Ultimately, Plaintiff's intent to delay is patent in its misuse of Rule 33(d).  Bryan Bank seeks only what Rule 33(d) explicitly mandates: specification of records sufficient to enable Bryan Bank to locate and identify relevant records. See  interrog. 4 (requesting identification of documents); FED. R. CIV. P. 33(d)(1).

> 11. If you contend that Bryan Bank or its agents have made any admissions against interest, identify with particularity all such

---

**(2)** giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

admissions against interest, including the participants, substance, date, and witness to each admission and any documents relating thereto.

**Plaintiff's Response:** Plaintiff objects to Interrogatory No. 11 on the ground that its request that Plaintiff identify any "admissions against interest" is on its face vague, ambiguous, and subject to differing interpretations.
Subject to and without waiving these objections, Plaintiff will endeavor to respond, subject to any applicable objections, upon Bryan Bank serving a properly clarified, narrowly tailored Interrogatory.

Plaintiff here attempts to take words, "admissions against interest," that have been used in evidence law since time immemorial (see, e.g., Wood v. McGuire's Children, 17 Ga. 303 (1855)) and render them "vague and ambiguous." These words are used continually by courts to refer to out-of-court statements or actions by a party that are inconsistent with the party's contentions in the present litigation. See A. Scherr, Green's Georgia Law of Evidence § 233, at 789 (6th ed. 2008).

Bryan Bank urges the Court to compel Plaintiff to answer this interrogatory, which is commonly propounded by parties in civil discovery.

## Requests for Production:

7. All documents that You will introduce at trial, including any that may be used solely for impeachment.

**Plaintiff's Response:** Plaintiff objects to Request No. 7 on the ground that it has not yet determined what documents it will introduce into evidence at trial. All such documents will be identified in accordance with applicable procedural rules.

28

This objection is troubling because of its statement that the requested documents "will be identified in accordance with applicable procedural rules, " which Plaintiff does not identify.  Bryan Bank is not aware of any procedural rules that require a party to identify--without a discovery request--documents that will be used for impeachment purposes.  Fed. R. Civ. P. 26(a)(1) (A)(ii) requires parties to provide documents the parties "may use to support its claims or defenses, unless the use would be solely for impeachment."  Plaintiff has not identified or provided documents it will use to support its claims against Bryan Bank or documents it will use to defend Bryan Bank's counterclaims.  Nor has Plaintiff stated when it will do so.  Accordingly, Bryan Bank urges the Court to require Plaintiff to produce those documents now.

# CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, the undersigned counsel certifies that the foregoing BRYAN BANK'S MOTION TO COMPEL AND MEMORANDUM OF LAW IN SUPPORT has been prepared in Times New Roman 14 point, one of the four fonts and points approved by the Court in LR 5.1B.

This 11th day of October, 2012.

s/ Paul W. Painter, Jr.
Georgia Bar No. 559450
Attorney for Bryan Bank & Trust
Ellis, Painter, Ratterree & Adams LLP
2 East Bryan Street, 10th Floor (31401)
Post Office Box 9946
Savannah, Georgia  31412-0146
Telephone:  (912) 233-9700
Fax:  (912) 233-2281
Email:  ppainter@epra-law.com

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing:

> John J. Richard, Esq.
> Samuel B. Zeigler, Esq.
> Taylor English Duma LLP
> 1600 Parkwood Circle, Suite 400
> Atlanta, GA  30339
>
> William J. Sheppard, Esq.
> James Bates, LLP
> 3399 Peachtree Road
> Suite 1700, The Lenox Building
> Atlanta, GA  30326
>
> Michael A. Kaeding, Esq.
> Robert E. Buckley, Esq.
> Kilpatrick Townsend & Stockton LLP
> 1100 Peachtree Street, Suite 2800
> Atlanta, GA  30309-4530

So certified this 11th day of October, 2012.

/s/ Paul W. Painter, Jr.
Paul W. Painter, Jr.
Georgia Bar No. 559450
Attorney for Bryan Bank & Trust
ELLIS, PAINTER, RATTERREE & ADAMS LLP
2 East Bryan St., 10th Floor (31401)
Post Office Box 9946
Savannah, Georgia 31412
(912) 233-9700
Fax: (912) 233-2281
Email: ppainter@epra-law.com

32